24-2135-cr
*United States v. Sternquist*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-five.

Present:

> WILLIAM J. NARDINI,
> SARAH A. L. MERRIAM,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

>  *Appellee,*

> v.                                                          24-2135-cr

KARA STERNQUIST, AKA CARA
SANDIEGO, AKA KARA WITHERSEA,

>  *Defendant-Appellant.*

---

| For Appellee: | ANDRÉS PALACIO (Anthony Bagnuola, Frank Turner Buford, *on the brief*), Assistant United States Attorneys, *for* John J. Durham, United States Attorney for the Eastern District of New York, Brooklyn, NY. |
| --- | --- |
| For Defendant-Appellant: | ALLEGRA GLASHAUSSER, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Kara Sternquist appeals from a judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *District Judge*), entered on August 9, 2024, sentencing her principally to sixty months of imprisonment and three years of supervised release following her guilty plea to one count of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). Sternquist's offense resulted from her possession of a firearm following previous felony convictions for producing false identification in violation of 18 U.S.C. §§ 1028(a)(1) and (b)(1)(A) and making and selling computerized templates for producing fake identification documents in violation of 18 U.S.C. §§ 1028(a)(5) and (b)(3)(c). On appeal, Sternquist argues that § 922(g)(1) is unconstitutional, both facially and as applied to her as a nonviolent felony offender, and that her sentence is procedurally and substantively unreasonable. We assume the parties' familiarity with the case.

## I.    Constitutionality of 18 U.S.C. § 922(g)(1)

At the outset, we conclude that our recent decision in *Zherka v. Bondi*, No. 22-1108-cv, 2025 WL 1618440, ___ F.4th ___ (2d Cir. 2025),[1] forecloses Sternquist's challenges to the constitutionality of § 922(g)(1). In *Zherka*, we held that § 922(g)(1) is constitutional both facially and as applied to those who have been convicted of nonviolent felony offenses. *See id.* at *20–22.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

As Sternquist concedes, our reasoning in *Zherka* applies equally here. Accordingly, Sternquist's challenges to the constitutionality of § 922(g)(1) fail.

## II.  Sentencing Challenges

"We review the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard," applying *de novo* review to questions of law, including the district court's interpretation of the U.S. Sentencing Guidelines, and clear error review to questions of fact. *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018). We discern no procedural or substantive error in the district court's imposition of Sternquist's sentence.

### A.  Procedural Reasonableness

"A sentence is procedurally unreasonable when the district court has committed a significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C. §] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Cooper*, 131 F.4th 127, 130 (2d Cir. 2025).

First, because we discern no clear error in the district court's finding that Sternquist possessed a number of devices that qualify as firearm silencers, we reject her argument that it miscalculated her Guidelines range. Guidelines § 2K2.1(a)(4)(B) provides, in pertinent part, that a defendant's base offense level is 20 if the offense involved a silencer, *see* 26 U.S.C. § 5845(a), and she was a "prohibited person" when she committed the offense. Under 18 U.S.C. § 921(a)(25), "firearm silencer" means "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." Guidelines § 2K2.1(b)(1)(B) instructs the district court to

increase the defendant's offense level by four if the offense involved between eight and twenty-four "firearms," a term that is defined to include silencers, *see* 18 U.S.C. § 921(a)(3); U.S.S.G. § 2K2.1(b)(1)(B) Application Note 1. Here, Sternquist argues that various cylindrical devices the district court classified as silencers were merely "solvent traps" used for collecting fluids while cleaning guns, and that there is no evidence that she intended to use the devices as silencers. But the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") submitted reports classifying the devices as silencers because they contained front and rear end caps, outer tubes, baffles, and "spot drilling" or "dimpling" used to designate where to drill a hole to "allow a projectile to pass through." App'x at 137–66. These reports provided an ample basis for the district court to conclude as a factual matter that the devices were intended by Sternquist to be used as silencers.[2] Sternquist does not dispute that she was a "prohibited person" at the time she committed her offense. *See* U.S.S.G. § 2K.2.1 Application Note 3. Thus, the district court did not err by calculating her base offense level to be 20 under § 2K2.1(a)(4)(B), or by increasing her offense level by four under § 2K2.1(b)(1)(B).[3]

Next, we reject Sternquist's argument that the district court relied on improper considerations at sentencing. Contrary to Sternquist's assertion, the district court did not improperly compare her to "gang bangers" and terrorists. In rejecting Sternquist's argument that she had illegally possessed firearms for "self-defense," the district court appears to have mentioned "gang bangers" merely to note that it had heard the same argument from defendants who had

---

[2] Sternquist needed to possess only one device qualifying as a silencer to trigger the base offense level of 20. Moreover, for purposes of § 2K2.1(b)(1)(B), there is no dispute that, including at least one of the purported silencers, Sternquist possessed at least eight items that qualified as firearms. Accordingly, we need only determine that one of the devices at issue was properly found to be a silencer.

[3] Because a determination that the district court erred in finding that Sternquist also possessed a machinegun and a receiver would not change her Guidelines calculation, we need not reach Sternquist's arguments with respect to those items.

committed violent crimes. App'x at 107–08. The district court's reference to terrorism pertained to the seriousness of Sternquist's possession of "phony law enforcement badges and ghost guns," *id.* at 126, particularly in light of her prior felony conviction for selling false identifications on the open market, given the potentially grave consequences that could have resulted if those items had fallen into the wrong hands. *Id.* at 125–26. Nor did the district court improperly reference Sternquist's past hardships. Following Sternquist's statement that she "never had any ill intent," *id.* at 117, the district court noted that Sternquist was visiting websites that were "very clearly expressing anti-law enforcement sentiment," and that given the "horrors" she experienced in a military academy as a child and in the U.S. Navy, it was "not a far stretch to think that she might have a slight axe to grind with the Navy or even with [the New York Police Department] for their failure to protect in her time of need," *id.* at 126. Motive is an appropriate factor for a district court to consider at sentencing, *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993), and Sternquist fails to explain why it was improper for the district court to discuss her personal circumstances, including as they might relate to her use of anti-law enforcement websites, when assessing why she may have chosen to engage in criminal conduct, *see United States v. Kane*, 452 F.3d 140, 143 (2d Cir. 2006).

We likewise reject Sternquist's contention that the district court relied on erroneous facts at sentencing. Contrary to Sternquist's argument on appeal, the district court did not inaccurately state that she had committed new crimes while out on bond pending further proceedings in the present case; instead, in discussing Sternquist's criminal history, the district court discussed her pattern of repeated arrests, including while out on bond in *other* cases, App'x at 113, 127. Nor did the district court commit procedural error by discussing issues with medical treatment and other conditions at the Metropolitan Detention Center ("MDC"). Although Sternquist suggests that the

5

district court's statements show that it misunderstood the circumstances of her presentence confinement, she acknowledges that she was housed at the MDC for two weeks. And, as discussed at her plea hearing, Sternquist remained in MDC custody while she was at a separate rehabilitation facility. Indeed, the district court's statements at Sternquist's plea hearing leave little doubt that it was well aware of where she was confined prior to sentencing. *See id.* at 79 (referring to the "medical staff at the nursing facility" where Sternquist was being housed). Indeed, the district court expressly recognized that Sternquist had "suffered more than the average inmate has suffered" and took that into account in determining the sentence. *Id.* at 128. Thus, the district court's discussion of the conditions at the MDC does not constitute a reliance on "clearly erroneous facts" amounting to procedural error.

Finally, we reject Sternquist's argument that the district court failed to properly consider whether her term of imprisonment would result in unwarranted sentencing disparities. Although courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), this point "merits little discussion" when the defendant has "failed to provide sufficient information to compel the district court to find that [other individuals who received lower sentences] were so similarly situated to [her]self that any disparity in sentence would be unwarranted," *United States v. Broxmeyer*, 699 F.3d 265, 296–97 (2d Cir. 2012). As the district court discussed at sentencing, Sternquist's sentencing memorandum cited various cases for the proposition that "[b]elow-guideline sentences are common in this district for people convicted of gun possession." Dist. Ct. Dkt. 111 at 12–13. But Sternquist failed to provide any specificity as to how the defendants in those other cases were so similarly situated to her that any sentencing disparity would

6

be improper. Thus, she provides no basis to conclude that the district court neglected its obligation under § 3553(a)(6).

**B. Substantive Reasonableness**

"A sentence is substantively unreasonable if it cannot be located within the range of permissible decisions, if it shocks the conscience, or if it constitutes a manifest injustice." *United States v. Williams*, 998 F.3d 538, 542 (2d Cir. 2021). "District courts must consider the sentencing factors outlined in 18 U.S.C. § 3553(a), and on review, we account for the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion." *Yilmaz*, 910 F.3d at 689. "While we do not presume that a Guidelines sentence is necessarily substantively reasonable, that conclusion is warranted in the overwhelming majority of cases . . . ." *United States v. Messina*, 806 F.3d 55, 66 (2d Cir. 2015).

We conclude that Sternquist's sentence is substantively reasonable. At sentencing, the district court thoroughly explained its consideration of the § 3553(a) factors, which included a lengthy discussion of Sternquist's criminal history and offense conduct, her past hardships, and the conditions of her presentence confinement. Following this explanation, the district court sentenced Sternquist to a term of imprisonment within her Guidelines range of fifty-seven to seventy-one months. Although Sternquist argues that the district court failed to properly consider her personal circumstances, including the difficulties she faced as a child, the way she was treated while in custody before sentencing, and the nature of her offense, the district court expressly discussed each of those topics at sentencing. Sternquist's disagreement with how the district court weighed those circumstances does not provide a basis for disturbing her sentence. *See Broxmeyer*, 699 F.3d at 289 ("[W]e are mindful that facts may frequently point in different directions so that

7

even experienced district judges may reasonably differ, not only in their findings of fact, but in the relative weight they accord competing circumstances.").

*     *     *

We have considered Sternquist's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk